UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REZA AZADEGAN and
ZEINAB MASHAYEKHI,

       Plaintiffs,               CASE NO. 07-CV-11238

-vs-                                     PAUL D. BORMAN
                                          UNITED STATES DISTRICT JUDGE

MICHAEL CHERTOFF, EMILIO
GONZALEZ, and ROBERT S.
MUELLER,

       Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants' May 24, 2007 Motion to Dismiss filed on behalf of Michael Chertoff, Emilio Gonzalez, and Robert S. Mueller ("Defendants"). (Doc. No. 4). Plaintiffs Reza Azadegan and Zeinab Mashayekhi ("Plaintiffs") filed their Response on June 6, 2007. On July 11, 2007, Defendants filed a Motion for Leave to File Supplementary Authority. Plaintiffs filed Responses to Defendants' supplemental briefing on July 30 and September 4, 2007. The Court held a motion hearing on September 20, 2007. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendants' Motion to Dismiss.

**I.    BACKGROUND**

This case arises out of Plaintiffs' action to compel the United States Citizenship and Immigration Service ("USCIS") and the Federal Bureau of Investigation ("FBI") to take action on their pending Form I-485 applications to adjust to permanent resident status.

1

Plaintiff Azadegan was born in Iran on October 20, 1974, and came to the United States as a student in 1999. (Compl. ¶ 8). Azadegan attended the University of Michigan and obtained a Ph.D. in 2004. (*Id*.). Azadegan is currently employed by Delphi Corporation on an H-1B status, and is the beneficiary of an approved immigrant visa petition on July 6, 2006. (*Id*.).

Plaintiff Mashayehki was born in France on July 30, 1981, and is the spouse of Azadegan. (Compl. ¶ 9). Plaintiffs have one child born in the United States, who is currently three and half years old. (*Id*).

On February 16, 2005, Plaintiffs applied for adjustment of status, or an application for permanent residency, at the Detroit District Offices of USCIS. (Compl. ¶ 10). Azadegan based his application on his approved immigrant visa petition through his employer. (*Id*.). Plaintiffs were fingerprinted on April 19, 2005, and on June 10, 2006. (Def. Br. Ex. A, Heinauer Decl. ¶ 13).

Plaintiffs allege that they have satisfied all legal prerequisites of their immigration application. Plaintiffs contend that the USCIS' delay has caused great expense and inconvenience for work-related travel and the annual expense of applying and paying for employment authorization on a weekly basis. (Compl. ¶¶ 12-14).

Plaintiffs seek a writ of mandamus to compel USCIS action on their applications. Alternatively, Plaintiffs maintain that Defendants are in violation of the Administrative Procedures Act ("APA") through the withholding or unreasonably delaying action on their applications. (Compl. ¶ 16).

On May 24, 2007, Defendants filed their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and/or (12)(b)(6). On that date, Defendants indicated that the FBI background check

had been completed for Plaintiff Mashayekhi, and that the USCIS was still awaiting the name check results for Plaintiff Azadegan. (Def. Br. Ex. E, Cannon Decl. ¶ 22).

## II. ANALYSIS

### A. Motion to Dismiss Standards

When evaluating a motion to dismiss pursuant to Rule 12(b)(1), the United States Court of Appeals for the Sixth Circuit has instructed:

> When a defendant moves to dismiss on grounds of lack of subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits. However, where a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true.

*Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (internal citations omitted).

The Supreme Court has recently explained the standards for a Rule 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and footnote omitted).

### B. Mandamus Relief and APA Subject Matter Jurisdiction

Before addressing the specifics of the parties' arguments addressing mandamus relief and subject matter jurisdiction under the APA, this Court notes that there is a split of authority in

3

district courts as to whether the USCIS has a non-discretionary obligation to complete immigration status adjustment applications within a "reasonable time." *See Xu v. Chertoff*, No. 06-15398, 2007 WL 2221401, *2 (E.D. Mich. July 31, 2007) (unpublished) (collecting cases). However, courts in the Eastern District of Michigan have been so far unanimous in holding that district courts cannot provide mandamus relief, nor enjoy subject matter jurisdiction under the APA, for adjustment of immigration status actions brought under § 1255(a). *See, e.g., Shen v. Chertoff*, 494 F. Supp. 2d 592, 595-97 (E.D. Mich. 2007); *Kiromi v. District Director, USCIS Detroit*, No. 07-10446, 2007 WL 2049521 (E.D. Mich. July 13, 2007) (unpublished); *Xu*, 2007 WL 2221401; *Chehab v. Chertoff*, No. 07-11068, 2007 WL 2372356 (E.D. Mich. Aug. 17, 2007) (unpublished).

Section 245 of the Immigration and Nationality Act authorizes the Attorney General to adjust permanent resident status for certain aliens admitted to the United States:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner *may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added).

Federal court mandamus jurisdiction is governed by 28 U.S.C. § 1361:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

The Sixth Circuit has recognized that mandamus relief is only available where an officer or agency's duty in question is ministerial, rather than discretionary:

> "Mandamus issues to compel an officer to perform a purely ministerial duty. It cannot be used to compel or control a duty in the discharge of which by law he is given discretion." Mandamus jurisdiction is available only if (1) the plaintiff has exhausted all available administrative appeals and (2) the defendant owes the plaintiff a "clear nondiscretionary duty" that he has failed to perform.

*United States v. Menichino*, 149 F.3d 1185, 1998 WL 381365, *1 (6th Cir. 1998) (table opinion) (internal citations omitted).

Defendants argue that § 1255, by its plain language, grants discretion to the Attorney General in the consideration of an adjustment to an individual's immigration status. Further, § 1255 does not impose a time deadline to process Plaintiffs' applications. Per Defendants, Plaintiffs "have no clear and indisputable right to an immediate adjudication of their applications, or any other ministerial task owed them by the defendants[.]" (Def. Br. 6).

The Administrative Procedures Act specifies that judicial review over an agency decision is precluded when either: (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law. 5 U.S.C. § 701(a).

Furthermore, the relevant statute in the INA precludes judicial review of discretionary decisions of the Attorney General:

> (B) Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review--
> 
> . . . .
> 
> > (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2).

Defendants contend that § 701(a) does not permit a district court to review the discretionary act of adjusting immigration status.

In response, Plaintiffs cite a number of district court cases in support of their position, yet fail to actually discuss the application of these opinions in the context of the instant case.

In *Nyaga v. Ashcroft*, 186 F. Supp. 2d 1244 (N.D. Ga. 2002), *vacated as moot*, 323 F.3d 906 (11th Cir. 2003), the district court found that it had mandamus jurisdiction to compel the INS to complete all remaining processing of the alien's diversity visa application. Significant to the district court's decision in *Nyaga* was the fact that the plaintiff's visa application was time-sensitive – i.e., if the INS failed to process his application before the end of the fiscal year, the plaintiff would lose his eligibility for the program. 186 F. Supp. 2d at 1247-49. The court additionally noted that "[t]he facts before the court are [ ] exceptional, and the court therefore specifically limits this case to its facts." *Id*. at 1256.

In the instant case, there is no danger that Plaintiffs' adjustment of status applications will "expire," like in *Ngaya*. Defendants have demonstrated that the delay in Plaintiffs' applications is due to the extraordinary burdens on the FBI to complete timely and accurate name checks. (Def. Br. 9-11).

Plaintiffs rely upon additional cases for the proposition that courts can issue mandamus relief or have jurisdiction under the APA, citing *Tang v. Chertoff*, 493 F. Supp. 2d 148 (D. Mass. 2007), *Afsharzadehyadzi v. Perryman*, 214 F. Supp. 2d 884 (N.D. Ill. 2002), *Holasek v. United States Dep't of Justice*, 123 F. Supp. 2d 1126 (N.D. Ill 2000), and *Diallo v. Reno*, 61 F. Supp. 2d 1361 (N.D. Ga. 1999).[1]

---

[1] Upon a review of these cases, the Court finds that *Holasek*, *Afsharzadehyadzi*, and *Diallo* do not support Plaintiffs' position.

The district court decision in *Tang* explains one view of the instant subject matter jurisdiction debate. In *Tang*, like in the instant case, a couple applied for adjustment of status, filing an I-485 application. 493 F. Supp. 2d at 148. The plaintiffs filed their applications on June 23, 2003; and were fingerprinted on August 31, 2004. *Id*. After the federal authorities informed them that their background checks had not been completed, Plaintiffs filed suit on February 6, 2007. *Id*. The parties presented substantially similar arguments that are before this Court in the instant case.

The *Tang* court concluded that: (1) section 1252(a)(2)(B) did not bar judicial review of the pace of processing of adjustment of status applications; (2) sections 555(b) and 706(1) of the APA impose on an agency a "reasonable" time period to act on matters before it; (3) the "reasonable time" requirement can be judged by "meaningful standards"; and (4) four years from the date of application, and three years from the date of fingerprinting, constituted an "unreasonable" time.

---

*Holasek* involved a situation where an alien sought judicial review of the district director's denial of his adjustment of immigration status application. The court found that the relevant statute, 8 U.S.C. 1252(a)(2)(B)(i), "expressly divests [courts] of jurisdiction to review a *denial* of an application for adjustment of status." 123 F. Supp. 2d at 1128 (emphasis added). In the instant case, Plaintiffs' applications are still pending and have not been denied.

*Asharzadehyadzi* similarly involved a situation where an applicant's adjustment of status application was denied. 214 F. Supp. 2d at 888.

In *Diallo*, the court concluded that it lacked jurisdiction to hear the plaintiffs' claims that the INS wrongfully failed to issue them diversity visas, and as a result denied their applications for adjustment of immigration status. 61 F. Supp. 2d at 1367-68.

In regards to the *Tang* court's central conclusion that § 1252(a)(2)(B) only "applies to the ultimate decision whether or not to grant relief," 493 F. Supp. 2d at 151, this Court disagrees. The following is the *Tang* court's discussion of the issue:

> 8 U.S.C. § 1252(a)(2)(B)(I) applies to the ultimate decision whether or not to grant relief. In passing it, Congress repeatedly noted the increasing number of aliens declared removable by the agency but never removed. Thus, the original purpose of this subparagraph was to ensure removal of those individuals adjudicated removable by making the Attorney General's decision final as to relief by adjustment of status. It was not to immunize the government from all claims based on conduct-even clear wrongdoing-that happens to relate to the adjustment of status process. Indeed, the title of 8 U.S.C. § 1252(a)(2)(B), " *Denials* of Discretionary Relief," (emphasis supplied), points clearly to its subject matter. The finality of the Attorney General's decision is not at issue in this case; plaintiffs do not seek review of any denial of adjustment of status. In fact, they seek to *accelerate* the process of adjudication, not slow it down.
>
> The second jurisdiction-stripping provision potentially at issue here, 8 U.S.C. § 1252(a)(2)(B)(ii), applies only to those actions or decisions "the authority for which *is specified under this subchapter to* be in the discretion of the Attorney General or the Secretary of Homeland Security." *Id.* (emphasis supplied). As to which decisions are "discretionary" for the purposes of this subparagraph, the Third Circuit has noted that the language of that provision applies "not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion." Likewise, the Ninth Circuit noted that 8 U.S.C. § 1252(a)(2)(B)(ii)
>
>> refers not to 'discretionary decisions,' as did the transitional rules [of the Illegal Immigration Reform and Immigrant Responsibility Act], but to acts the authority for which is specified under the INA to be discretionary. Following the 'well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words,' we must assume that this difference in language is legally significant. If Congress had intended to withdraw jurisdiction over all 'discretionary decisions,' it would have used the same language found in the transitional rules.
>
> The Fifth Circuit agreed:
>
>> One might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of the authority to review any discretionary immigration decision. Such a reading

8

> is mistaken, however, because § 1252(a)(2)(B)(ii) strips us only of jurisdiction to review the discretionary authority that is specified in the statute. As we have repeatedly noted, we observe again that the language of § 1252(a)(2)(B)(ii) is thoroughly pellucid on this score; it does not allude generally to 'discretionary authority' or to 'discretionary authority exercised under this statute,' but specifically to 'authority for which is specified under this subchapter to be in the discretion of the Attorney General.
>
> The Second, Sixth and Eleventh Circuits have all reached the same conclusion, holding that, though an Immigration Judge's decision not to grant a continuance is discretionary and may be considered an act of the Attorney General, it is not "specified under [the relevant] subchapter to be in the discretion of the Attorney General."
>
> Thus, it is not enough that an action in practice involves some discretion; rather, to be immune from judicial review, it must be specified as discretionary in the INA. "The subchapter at issue specifies only that it is within the discretion of the Attorney General to adjust one's status; it does not address, much less specify any discretion associated with, the pace of application processing." I am aware that some courts have reached a different conclusion. Nevertheless, I am not persuaded that Congress, despite its careful wording of the jurisdiction-stripping language, intended to vaguely immunize all conduct as long as the agent can be said to have exercised some discretion in the performance of it, or it can be related to a discretionary action. The clear meaning of 8 U.S.C. § 1252(a)(2)(B)(ii) is that courts may not review decisions specified as discretionary by the INA. Despite the care taken in the INA to specify the *substance* of an adjustment of status decision as discretionary, the *pacing* of such a decision is not so specified.

*Id*. at 151-54 (internal citations omitted) (emphases in original).

From the foregoing discussion, the *Tang* court concluded that under either provision of § 1252(a)(2)(B), a court only lacks jurisdiction to review the final, substantive decision on the adjustment of status, yet has jurisdiction over the "pacing" of such decisions. This Court respectfully disagrees with this analysis based upon the clear readings of § 1255(a) and § 1252(a)(2)(B).

Section 1255 specifies that adjustment of status "may be adjusted by the Attorney General, in his *discretion* and *under such regulations* as he may prescribe[.]" (emphases added).

Section 1252(a)(2)(B)(ii) reads that there is no judicial authority to review "any other *decision* or *action* of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General. . . ." (emphases added).

The Court notes that the district court in *Qiu v. Chertoff*, 486 F. Supp. 2d 412 (D.N.J. 2007), provides a thoughtful and well-reasoned rebuttal to the court's rationale in *Tang*:

> [The] Court is not persuaded by those cases which have held that immigration officials have a non-discretionary duty to adjudicate I-485 applications. First, other sections of the United States Code, which empower the Attorney General or the Secretary of Homeland Security to adjudicate an application, are accompanied both by a statutory time period for adjudication and an explicit provision granting applicants a right to judicial review. However, in the case of an adjustment of status application, there is no similar provision establishing a specific time frame for adjudication, nor an accompanying provision conferring a right to judicial review. This is an indication that, with respect to an application for adjustment of status, Congress did not intend to limit the discretion of immigration officials by specifying a certain time period within which they must act.
>
> Second, none of the regulations cited by other courts as the source for Defendants' non-discretionary duty speak to the issue of withholding adjudication. The phrases "shall be notified," "shall record," and "shall be interviewed" do not mean the same thing as "shall adjudicate." Further, these mandatory – i.e. non-discretionary-phrases have been cited in isolation, thus ignoring other sections of the regulations which allow Defendants to exercise discretion throughout the application process. For instance, the USCIS may waive an adjustment interview, 8 C.F.R. §§ 245.6, 1245.6 ("[The adjustment] interview *may* be waived ... when it is determined by the Service that an interview is unnecessary" (emphasis added)), and *"may* direct any necessary investigation" into an application. 8 C.F.R. § 103.2(b)(7) (2006) (emphasis added).
>
> The regulation that speaks most directly to the Defendants' discretion to withhold adjudication is 8 C.F.R. § 103.2(b)(18), which is entitled "Withholding adjudication." Section 103.2(b)(18) confers discretion on immigration officers to withhold adjudication while applications are investigated. It provides that an immigration officer "may" withhold adjudication every six months if he or she *"determines it is necessary* to continue to withhold adjudication pending completion of the investigation." The terms of the regulation clearly contemplate that certain applications may require lengthy investigations.

> The Court finds it instructive that none of the cases holding that a non-discretionary duty exists to process I-485 applications have discussed the implications of § 103.2(b)(18). Indeed, none of the cases cited by Plaintiff or revealed in the Court's own research which have held that a non-discretionary duty exists to process I-485 applications cite to § 103.2(b)(18). Nor do these cases indicate in any way that they have considered the import of § 103.2(b)(18) as it relates to the question of the agency's discretion to withhold adjudication.

*Id.* at 417-19 (footnotes and internal citations omitted) (emphases in original); *see Safadi v. Howard*, 466 F. Supp. 2d 696, 698 (E.D. Va. 2006) (stating that § 1252(a)(2)(B)(ii)'s use of the word "action" also "encompasses any act of series of acts that are discretionary within the adjustment of status process."). This Court recognizes that another court in this district has found this reasoning persuasive. *See Chehab*, 2007 WL 2372356, at *2. The Court finds the reasoning in *Qiu*, *Safadi*, and the other courts in this district persuasive on the mandamus and APA issues.[2]

---

[2] In addition to the above reasoning, this Court finds another possible impediment to granting Plaintiffs relief – whether this Court can compel, through mandamus or otherwise, the FBI to complete the required security background checks. Since 1998, Congress has required that "none of the funds appropriated or otherwise made available to the [USCIS] shall be used to complete adjudication of an application for naturalization unless [USCIS] has received confirmation from the [FBI] that a full criminal background check has been contemplated." P.L. 105-119, 111 Stat. 2440 (1997).

Defendants maintain that USCIS cannot move on Plaintiff Azadegan's application, and hence not his wife's application, until the agency receives the results of Azadegan's security check. Most courts considering the issue have concluded that they cannot compel the FBI to complete these background checks more quickly. *See, e.g., Eldeeb v. Chertoff*, No. 07-236, 2007 WL 2209231, *21 (M.D. Fla. July 30, 2007) (unpublished) (collecting cases). Even the courts that have found APA jurisdiction over the USCIS in these instances have recognized that the FBI did not owe the plaintiffs a "clear, non-discretionary" duty to process the security checks – partly because the relationship between the USCIS and FBI is contractual, rather than statutory. *See Konchitsky v. Chertoff*, No. 07-00294, 2007 WL 2070325, *6 (N.D. Cal. July 13, 2007) (unpublished). Plaintiffs make no substantive argument explaining a basis on which the Court can order the FBI to complete the background checks for USCIS in a more expeditious manner. Furthermore, there is no indication that the USCIS unreasonably delayed in sending Plaintiffs' information to the FBI.

11

Thus, for the foregoing reasons, the Court finds: (1) that mandamus relief is not available; and (2) that the § 701(a) of the APA precludes judicial review in this instance. The Court notes that it joins the other courts in the Eastern District of Michigan that have considered this issue.

## III. CONCLUSION

The Court hereby **GRANTS** Defendants' Motion to Dismiss.

**SO ORDERED**.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: September 27, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 27, 2007.

s/Denise Goodine
Case Manager